Thank you, Your Honors, and may it please the Court, I'm Bruce Ortega, Deputy Attorney General, and I'm representing the Appellant and the Warden in this case. And I'd like to start off by discussing the standard of review and state that in rejecting Petitioner's claim of prejudicial cumulative error in this case, the State Court of Appeal did not rule contrary to or unreasonably apply clearly established United States Supreme Court precedent. And indeed, this is an issue for AADPA review. Did the State Court rule on the cumulative error claim in an objectively unreasonable manner? It's not an issue for de novo review. Neither the High Court nor this Court has ever declared that a cumulative error analysis must proceed by way of a particular methodology. All this Court has said is that a cumulative error review cannot be a balkanized issue-by-issue harmless error review and must look to the effect of the errors as a whole and look to whether the cumulative effect of the errors denied the defendant a fundamentally fair trial. Unfortunately, one of the limitations of language, either spoken or written, is that we can discuss things in detail only one at a time. And the State Court here in its cumulative error analysis did go through the errors one at a time. However, the State Court also stated that it had viewed the effect of the errors together and collectively and thus to say that the State Court did not conduct a cumulative error review is to not take the State Court at its word and we submit there's no basis for that. And here, also contrary to the ruling of the District Court, when the State Court of Appeals cited to the language of a California Supreme Court and held that the errors did not amount to a serious flaw in the trial and the defendant's trial was fundamentally fair and the verdict reliable, the State Court was not in error. The State Court was invoking the due process clause. In fact, fundamentally fair, reliable verdict, this is the precise language that this Court has used in cumulative error analysis in prior cases. And as I stated, the State Court did here reasonably conclude that despite six evidentiary errors, the petitioner received a fair trial. You admit there were several errors. There were six, Your Honor, one of a federal constitutional nature and five of a state law nature. Is there any kind of a case which suggests that when you look at this cumulative error that you're supposed to give greater weight to error on the constitutional side as opposed to a state issue? I found no case that speaks to that, Your Honor, but I don't think the federal constitutional error loses its federal constitutional nature when it's part of the cumulative error analysis. And I think when the State Court says we've looked at the errors singly, we've looked at the errors cumulatively, the petitioner received a fundamentally fair trial and the verdict's reliable, it's not at that point taking away the federal constitutional nature of the one error. I think it's saying that error remains harmless beyond a reasonable doubt, and even in combination with the other errors, petitioner received a fundamentally fair trial. I don't know if that answers Your Honor's question. I think one way to look at this case is to note that the defendant essentially had a four-pronged defense. One prong was essentially that the facts, as presented by the prosecution, didn't really establish a premeditated and deliberate murder. Secondly, the facts showed that petitioner killed his wife in a heat of passion sudden quarrel, and thus the verdict was voluntary manslaughter. A third prong was essentially the defendant killed his wife in a good faith but unreasonable belief of the need for self-defense, and thus the crime was voluntary manslaughter. And a fourth minor prong was essentially that he was undergoing a manic episode at the time and could not have premeditated and deliberated the murder. In our view, every piece of erroneously excluded evidence was filled by precisely the same or similar evidence. Likewise, every piece of erroneously admitted evidence had other properly admitted evidence that was consistent with it. Thus, to make them in a manic episode, it seems to me that Dr. Jackman's testimony was excluded in that. Dr. Jackman was not allowed to testify that a person under a manic episode would exercise poor judgment and act impulsively. That's correct. It was excluded, and then it was again objected to when defense counsel argued it. Well, that's only partially correct, Your Honor. He argued at first that a reasonable inference in this case was that Chuck was engaged in a kind of manic episode at the time that Mary was killed. And what would that mean? It would mean that he's less likely to be carefully weighing and considering the consequences of his actions, probably more likely to be ration impulsive, less likely to be thinking things through. That's at 3579. That was not objected to. When he tried to repeat that argument subsequently, there was an objection. And the prosecutor asked that the jury be told there's no evidence to support that assertion. The trial court didn't say that. The trial court only told the jury arguments of counsel are just that. I will instruct you on the law. Well, I only adhere on the brief prosecutor objection the court sustained. That's correct. But he was the jury was not told that that argument had no evidentiary basis. Well, he couldn't make the argument. The court said he couldn't make it. That's correct. What the court of appeal, the state court of appeal focused on is what Mr. Jackman was allowed to testify to. And that was that somebody undergoing a manic episode would be irritable, would be ration impulsive. Had Dr. Jackman examined Mr. Parle? He had an interview with him, but he stated he wasn't going to rely on that interview in making his diagnosis. So the matters as to which he was not allowed to testify were matters of theory about how someone hypothetically with type one bipolar disorder would behave? That's correct. So they weren't based on his actual observations as to how Mr. Parle might conduct himself? No, it was how somebody who's undergoing a manic episode might conduct themselves. Whereas the other psychiatrist had actually had Mr. Parle under her care. Is that correct? Correct. And the testimony was a different bipolar disorder. But I think what's important to focus on here is that the state court of appeal found that the manic episode defense was not wholly precluded. In other words, Dr. Jackman was allowed to testify to some things from which a jury could have inferred that Mr. Parle did not premeditate and deliberate the crime. And I think what's also important to know is when the district attorney in his rebuttal argument made the statement why he objected. And he said there really was no evidence that somebody who's undergoing a manic episode would not premeditate and deliberate, which wasn't entirely true. Those words were not spoken. Dr. Jackman was not allowed to testify to that. But Dr. Jackman was allowed to testify that somebody undergoing a manic episode would be irritable. And the prosecutor then said, I suppose you could make an argument. Well, if the guy was really an angry and irritable during a manic episode, you might be less circumspect. So in other words, the prosecutor was essentially telling the jury, look, there is some evidence to support a manic episode here. Again, we concede that the defense they wanted to present was erroneously excluded. The State Court of Appeal held Dr. Jackman should have been allowed to testify to this. He was not. Well, I look at what's quoted in the brief Mr. Fernandez is saying, too. There's no evidence in this case that bipolar disorder has an impact on one's ability to premeditate. That's correct, Your Honor. He said that, and I'm arguing that that wasn't entirely correct. Mr. Fernandez's argument wasn't entirely correct. Well. And he went on to then make an argument that was essentially what the Court of Appeal found as rendering the Jackman error harmless. And then the question for this Court is whether that is an objectively unreasonable determination. You're saying that because essentially the evidence came in in other forms. Correct. Correct. There was evidence from which a jury could have inferred, had it wished, that he could not have premeditated and deliberated this crime because he was undergoing a manic episode. And I think what's important to now look at is the evidence of that premeditation and deliberation that was before the jury. Mr. Parle had been setting this crime up for weeks. He had been talking to the police chief about when he could use deadly force against his wife. He was telling others, including those in law enforcement and his neighbors, that his wife was unbalanced and that he had reason to fear her. He hangs up on the 911 operator. He later begins a series of lies to the police, including that Mary had stabbed herself. And then there's the evidence that this Court pointed to at page 1044 of its prior opinion that speaks to premeditation, that Mary's diary showed the petitioner had a history of inflicting severe physical punishment on her, that the evidence showed he had previously threatened to kill her, and that despite all of those admitted lies to the police, he did make one comment to the police that suggested he had considered his actions. And finally, let's not forget that while on the stand Mr. Parle told the jury that 99.9 percent of what he had told the police were lies, he also told numerous lies on the stand to such an extent that his lawyer at page 3541 of the reporter's transcript told the jury, I'm not going to rely on anything that Chuck said, either in his testimony or during his interrogation, in trying to make the voluntary manslaughter case. And it's our view that a defendant cannot lie to such an extent that his attorney has to forthrightly discount many of his pretrial statements and his testimony in trying to fashion a defense theory and then claim it was evidentiary error which prejudiced the defense to such an extent and prompted the jury to reject the prosecution's persuasive first-degree murder evidence. Unless the Court has any further questions, I submit for now. Okay. Let's hear from Mr. Buchanan. May it please the Court, Martin Buchanan appearing for Chuck Parle. I'd like to begin, Your Honor, by addressing your question about whether Dr. Jackman's testimony was purely theoretical because I don't think it's quite true that it was. Dr. Jackman testified that he reviewed all of the defendant's medical records and he also reviewed the videotape of the interrogation that was done immediately after the crime occurred. And based on his review of the medical records and that videotape, Dr. Jackman concluded and explained in great deal why he had concluded that Mr. Parle was, in fact, suffering from a manic episode. So he had direct evidence to support his conclusion, and it wasn't merely hypothetical or theoretical. And that's why, in particular, it was critical for Dr. Jackman to be allowed to explain to the jury what it meant in terms of premeditation that Mr. Parle was suffering from a manic episode. He was trying to explain to the jury what are the symptoms of a manic episode and what effect do they have on a person's ability to weigh and consider his actions. That is exactly what premeditation is all about. And I think, aside from the series of questions that defense counsel was prevented from asking him, I think the moment in the trial that most shows how damaging this was is when the following testimony by Dr. Jackman was stricken from the record. And he's talking about people suffering from manic episodes. Quote, their judgment is impaired. They're impulsive. They don't stop to consider consequences or alternatives. They tend to act, think, and behave in a relatively rash manner, end quote. That testimony was stricken, and when defense counsel then tried to argue that point to the jury in closing argument, the prosecutor objects. The objection is sustained. So he's unable to present the defense that he intended to present. Worse yet, the prosecutor then, in his final rebuttal argument, tells the jury, there's no evidence in this case that bipolar disorder has an impact on one's ability to premeditate and deliberate, end quote. The jury knew that your client had the bipolar problems, right? The jury knew that Dr. Jackman, yes. And there was no dispute that the prosecution's expert, who was in fact the defendant's psychiatrist, also testified that he suffered from bipolar. However, the critical difference between the two is in whether it was bipolar type 1, which involves manic episodes, or bipolar type 2, which does not. And the defense psychiatrist testified that it was bipolar type 1 and that he was suffering from a manic episode. But his personal therapist said it was a different kind, right? Correct. Type 2. That's correct. And that's why the admission of that testimony was also prejudicial, because it is conceded now that the admission of the defendant's psychiatrist's testimony and the medical records, that was also error. So here we have the two. That was a violation of a California statute, is that right? Well, the State Court of Appeal found it was not only a violation of state law, but also of federal constitutional law. Is that true? Yes, Your Honor, it is a violation of his right to privacy, and that's never been contested at all at any time in these federal habeas proceedings. But is there any law in there? No. The State Court of Appeal cited a California Supreme Court case, which in turn cites federal authorities holding that it is a violation of their right to privacy. So there is case law there. It hasn't been briefed. And as I say, it's never been contested. And I don't know that it makes much difference whether it's purely a state law error or a federal error. It's error nonetheless. It's part of the cumulative error analysis. And here you have the prosecution being allowed to call the defendant's own psychiatrist as a witness against him to testify to facts that help the prosecution's case erroneously. And then when the defense tries to rebut that with its own psychiatrist, it's cut off at the knees. So it really truly was a double whammy to the defense. What I think is absolutely the most unreasonable, objectively unreasonable aspect of the State Court of Appeal's opinion is this. The State Court of Appeal conducted an exhaustive 58-page analysis of all of the errors that occurred in this case, the ones we've mentioned and others. The Court of Appeal, State Court of Appeal, found multiple errors. The State Court of Appeal found them to be individually harmless. All of those errors went to the only issue in dispute at trial, the defendant's state of mind. And yet, in its analysis of the cumulative impact of those errors, the State Court of Appeal never addressed the strength of the prosecution's case. One can scour that opinion for any reference to the strength of the prosecution's evidence of premeditation, for any reference to the strength of the prosecution's evidence that this was not a heat of passion killing, and one will not find it. There is no discussion whatsoever of that point. I think there's a reason the State Court of Appeal did not mention that, and that was because the State had essentially conceded in its briefing in front of the State Court of Appeal that, in fact, there was ample evidence before the jury that this was not a premeditated killing and that it was a heat of passion killing. And that's why I've included those portions of the State's brief in the supplemental excerpts of record where the State says repeatedly there was a plethora of evidence, there was plenty of evidence that this was a heat of passion killing after legally sufficient provocation. So I would guess that's why the State Court of Appeal didn't address the overall strength of the evidence. And that, Your Honors, I think is the epitome of any cumulative error analysis. And if you look at the U.S. Supreme Court's cases on cumulative error, they all involve a series of errors all going to the same issue in an otherwise closed case. Take Taylor v. Kentucky. There you have a series of errors, none of them individually harmful, but collectively they undermine the prosecution's case in what the Supreme Court described as a swearing contest between the defendant and the victim. Who made that determination of harmless error in that case? Or not harmless error, cumulative error? The U.S. Supreme Court. Okay. And then this one, what we have is a different level, right? The California Court of Appeal makes that decision, and then we have special deference here, right? If the California Court of Appeal had analyzed the strength of the evidence and had concluded that, in fact, this was not a closed case, I would agree with you, Your Honor. But my point is the Court of Appeal never addressed that. The California Court of Appeal never anywhere in that whole 58-page opinion addressed the strength of the evidence and whether this was a closed case. And I think the evidence cries out that it was a closed case, and that's why the State Attorney General conceded, essentially, that it was in its briefing, Your Honor. This was a case where all of the evidence indicated this was a killing that occurred spontaneously in the midst of a heated domestic quarrel, one of many, many, many such quarrels over the course of this turbulent to understated relationship. Well, the State claims that your client was talking to the police a little in advance and kind of figured out how he could kill his wife. But he was asking the police when he could use self-defense in defense of himself. And there are two ways to look at that, Your Honor. Sure, you could say he's trying to set up a self-defense claim and, therefore, he's premeditating a murder. That's one way to look at it. Another way to look at it is that he's genuinely in fear of her. And let's not forget he did have reason to fear her. There's no dispute that she had stolen his guns. There's no dispute that they had been mutually abusive to each other over the course of the many years of their relationship. I don't know how it lasted as long as it did, frankly. I agree, Your Honor. And there's also no dispute, although the jury never heard this, that Mary herself in the week before this stabbing when she was committed to a mental hospital was making statements to medical personnel that she wanted to hurt and kill the defendant. Now, again, that's also part of the cumulative error. That should have been admitted and was not. But the point is the defendant had reason to fear her. Therefore, his calls to the police, and let's not forget, the defendant is not an entirely mentally stable person himself. So it may seem silly to call the police and ask when you can use self-defense, but this couple, both of them, had a history of mental problems. Counsel, all of this is in front of the jury. I just took a look at the States' admissions that you provided in your supplemental excerpts of record. So the State has told the Court, look, there was ample evidence on which your — on which Mr. Parle's defense could have succeeded. It didn't succeed. I mean, there was a lot of evidence in here on which a jury could have concluded that he was provoked, that it was self-defense, that he was in a manic episode. I mean, there's a number of different theories that the jury might have had. We've got a lot of evidence in this case. Yes. And yet the jury came back with a first-degree question. Why isn't that sustainable? Because what I hear you saying, Your Honor, is that if you look at the entire record, the case was pretty evenly balanced. Considering the prosecution's burden of proof and all the evidence presented, the scales were kind of in equipoise. The jury found that they were weighted a little more heavily in favor of the prosecution. Well, if you'd taken off the improperly admitted evidence that favored the prosecution from that scale and you'd added the improperly excluded evidence that favored the defense, it could have come out the other way. And I think that's what the U.S. Supreme Court was saying in Chambers v. Mississippi, because exactly the same kind of analysis that Your Honor just made could have been made in Chambers v. Mississippi. And Chambers is a cumulative error case. It's a case where the primary defense was somebody else did it. Now, the defendant had ample evidence that he presented to the jury in Chambers that somebody else did it. He had an eyewitness who said that somebody else did it. He had another witness who said that somebody else had a gun immediately after the shooting. He had somebody else's sworn and written confession that he did it, which was admitted into evidence, and read to the jury. He had further evidence that defeated somebody else's alibi. All of that was in front of the jury. So very easily, the U.S. Supreme Court could have said any further evidence that this somebody else did it would have been cumulative. But the point is, in a close case where the scales are so evenly balanced, where you have in this case such powerful evidence of provocation, I've never seen anything like the other piece of evidence that I've included in these supplemental excerpts on page 4, Mary's list of things I could do to Chuck. This is her list of everything that she could do to provoke Chuck into a rage. This is evidence of provocation more compelling than anything I've ever seen in any type of voluntary. This was excluded or this was admitted? This was admitted. This was admitted. And further, if you go down the list, Mary had done, if not these exact things on this list, a good number of them. The evidence of provocation included that she had slitted the tires of his car the week of the stabbing, that she had pounded dents in his car, that she had stolen his guns, that she had broken his Beatles memorabilia, that she had dumped all his belongings on the front lawn, that she had run up his credit cards. And, of course, her diary has that whole scene where she cuts up all the credit cards, puts them on the table, pours champagne so that she can be waiting for him calmly in order to confront him and provoke a fight. The jury knew all this, right? The jury knew all of that, Your Honor, right. And so, yes, the jury could have come back. I mean, that's my whole point. If it were overwhelmingly in one direction or another, if the prosecution's case of premeditation were so overwhelming and I had no evidence before the jury of heat of passion or provocation, I would be hard-pressed to argue that these errors were prejudicial. The whole point is it was a closed case. Mr. Buchanan, if this were direct appeal, your argument, of course, would by definition have greater force. What makes the California Court of Appeals decision objectively unreasonable? What is objectively unreasonable about it? It's a very, very high standard. I agree. What is objectively unreasonable about it is that it failed to consider the strength of the prosecution's evidence of premeditation and the strength of its evidence that this killing was not committed in a heat of passion, bearing in mind that it was the prosecution's burden to prove beyond a reasonable doubt that it was not a heat of passion killing. And is there clearly established Supreme Court law on that question, that the court that fails to consider the strength of the prosecution's case has committed unreasonable, is objectively unreasonable? I think a fair reading of Taylor v. Kentucky, of Chambers v. Mississippi, and even of Chapman v. Did you have any specific language in Taylor v. Kentucky, or are we just referring to the whole way that the court analyzes the case? I do not have specific language such that you're referring to. I think it just, if you look at the case in its entirety, that clearly, in all of these cases, the closeness of the evidence is critical to the cumulative error analysis. If the evidence weren't close, the individual errors would be harmful or prejudicial, and there would be no reason for cumulative error analysis. Mr. Buchanan, it seems to me fairly clear that Judge Alsop did a very careful job, but that he did think of himself as doing de novo review, and that was the wrong standard. And I wonder if we're not compelled to send it back and tell him to do it again, applying the right standard. First of all, I'm not conceding that Judge Alsop erred by conducting de novo review. That's not my primary argument here this afternoon. It's not your argument. No, it's the argument of the State, that he really didn't have the right standard in mind. Okay. Let me just respond to that on the merits. What Judge Alsop found was that the State Court of Appeal had not, in fact, conducted a genuine analysis of the cumulative effect of the errors, that basically all the State Court of Appeal had done was to repeat all of the same reasons it had already found the individual errors to be harmless. And since the State Court of Appeal had not actually decided the issue on the merits, Judge Alsop conducted de novo review. I would add, and I've argued in my brief, that the State Court of Appeal also applied the wrong legal standard because it did not apply the Chapman harmless beyond a reasonable doubt standard. And if I understood counsel's argument here this morning, I think he's conceded that Chapman applied, but the State Court of Appeal did not apply that standard. So for those reasons, I think Judge Alsop correctly conducted de novo review. Now, if the Court is to conclude otherwise, I'm not sure I have much input on whether it should remand to Judge Alsop or whether it should just decide the case under the AEDPA standard. Why should we do it ourselves? He's very familiar with the record. I would leave that to your discretion, Your Honor. I think the Court could do either. So I don't know how to respond to that. Briefly, I just want to talk about one other individual error, and that is the prosecution's use of Dr. Asinas, the defendant's psychiatrist, as a witness in its favor. And, again, bearing in mind that the State Court of Appeal found that all of the improperly excluded evidence was essentially cumulative of other evidence. That is patently incorrect, certainly as to Dr. Asinas' case. Dr. Asinas was allowed to bring out all of the defendant's psychiatric records from Kaiser Hospital over the course of the last year and a half. All of those physical records were submitted to the jury, and Dr. Asinas' testimony as to the defendant's symptoms, as to his psychiatric treatment, were admitted to the jury. There was no other evidence on those points. There was no other evidence of the defendant's mental records, of his psychiatric history, of his treatment, of his medications. That was the only evidence on that issue. So how the State Court of Appeal could have held that that was merely cumulative of other evidence, I do not know. And why was it important? Well, it was important, number one, as I've mentioned, because Dr. Asinas directly contradicted the testimony of the defense psychiatrist, Dr. Jackman, as to the defendant's diagnosis, type 1 or type 2. Dr. Asinas testified that the defendant had never, in his treatment, exhibited any symptoms of a manic episode. Again, directly contrary to the defense psychiatrist. Dr. Asinas testified that the defendant never made any specific complaints about Mary's conduct. Again, undermines any theory of provocation. Dr. Asinas testified that when the defendant first came for treatment, there was a checklist of about 39 potential symptoms, and the defendant checked unusual thoughts, thoughts of hurting others. And he told Dr. Asinas that his wife, Mary, in particular, was a stressor that made him, quote, ready to explode. Now, the prosecutor, predictably, having elicited his testimony over the objection of the defense and in violation of the privilege, used it to argue premeditation. And the DA's entire theory of premeditation was this. The DA's theory was that the defendant identified Mary as the cause of all of his problems, and he thought if he got rid of her, all of his problems would be over. And so when the prosecutor reaches the pinnacle of his closing argument and is telling the jury this theory of premeditation, he says, quote, remember that he sought psychiatric help, and he had 34 out of 37 problems, including ready to explode and ready to blow up. Why? I got a wife I can't stand. Can't stand her. And that's at page 3516 to 17. And the prosecutor goes on to argue that Mr. Parle thought his troubles would be over if he killed his wife. So, again, it's not cumulative, Dr. Asinas' testimony, all the psychiatric records. It goes directly to premeditation in an otherwise closed case with other multiple errors going solely to the defendant's state of mind. And for that reason, I would submit there is cumulative prejudice. The defendant was denied his right to a fair trial. And Judge Alsup was correct when he concluded that the habeas petition should have been granted. Thank you. Thank you, Your Honors. Let me say this. If it's a closed case under the AADPA, the state gets the benefit of that, the state's opinion. So if it's close. Counsel, I assume that it is your position that Judge Alsup used the wrong standard in evaluating this case. Correct. And if we believe that he's evaluated the wrong standard, what's the remedy? The remedy is, as Judge Noonan said, it could be sent back, I suppose, for Judge Alsup to then do it under the correct standard. Or this court could just itself address the issue. Did Judge Alsup hold a hearing on this one? No, it was submitted on the briefs. It's all on the briefs. We have everything before us that Judge Alsup had beforehand. That is correct, Your Honor. It's just a legal question, essentially, is what it is. Or you say it's a factual question. No, it's a legal question under the AADPA. Did the state court unreasonably determine the facts? Did the state court rule contrary to or unreasonably apply? Mr. Buchanan, he's a terrific attorney. He's very powerful. He's very eloquent. I have the utmost respect in the world for him. I think he's wrong when he states that a cumulative error analysis requires the court to state that it is evaluating the strength of the evidence. My original point was there's no particular methodology for state courts to engage or how they must engage in cumulative error. This court itself has said we're not here to grade the state's papers. We're here to determine whether the state's decision is reasonable. And when the state says in sum we believe that none of the alleged errors, whether considered individually or collectively, resulted in a serious flaw in the trial, rather petitioner's trial was fundamentally fair and the determinations by the judge and jury were reliable, I think it's unfair to say that in that determination, that cumulative error determination, the state court wasn't necessarily implicitly weighing the evidence. And the other thing I would point out is Mr. Buchanan referenced the nurse's testimony about how the nurse wasn't allowed to propose testimony, that she wasn't allowed to testify that Mary had threatened the petitioner preceding the trial. The jury had the diary in front of it. The diary included Mary perpetrating violence upon petitioner, cutting him with a letter opener and then writing, he was bleeding like a stuck pig. I think what's interesting here is in the prior appeal, the position of the petitioner was this diary's admission was so prejudicial because it allowed all this evidence of premeditation and deliberation to come in. And now there's no mention of the diary whatsoever. And so if there's any inconsistency here, I think it's on the part of the petitioner, not us. I would argue that at no point in the state court did we concede that this was a voluntary manslaughter case. We, as Judge Bybee pointed out. Voluntary manslaughter is an older statement. It would be second-degree murder, wouldn't it? Well, if there's no premeditation and deliberation but there's intent to kill and voluntary manslaughter doesn't apply, it's second-degree murder. That's correct. But I understood Mr. Buchanan to be stating that in the state court of appeal, we somehow conceded that the evidence of premeditation and deliberation was weak and that this was a voluntary manslaughter case. That's not how I read our briefing. Our briefing was there was evidence here, cumulative evidence on a lot of these points that substituted for the voluntary manslaughter evidence. We never said it was persuasive. And we argued it was not persuasive for many of the reasons Mr. Buchanan didn't reference, which was his own client's testimony. And I want to finish by reading this one part of Mr. Parle's examination, cross-examination. Question, but if we have to assign blame for someone starting it, it is your testimony that she started it. Never said that, sir. Could have been just as well me provoking it that night. And that's at page 3186. So here you have a petitioner essentially telling the jury, it's possible that I started this fight. But then yet the petitioner arguing no, it was all the evidentiary errors that kept the jury from not rejecting that testimony and finding voluntary manslaughter. Unless the court has any further questions, we'd submit. We thank both counsel for your argument today. Parle v. Runnels is submitted. And the court will stand in recess until tomorrow. Thank you.
judges: Noonan, Siler, Bybee